(No. 38706.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DONALD JOHNSON, Plaintiff in Error.

*Opinion filed September 23, 1966.*

ROBERT J. BARON, of Joliet, appointed by the court, for plaintiff in error.

GEORGE E. SANGMEISTER, State's Attorney, of Joliet, (JOHN BLAKSLEE, of counsel.) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant was convicted of armed robbery in a Will County circuit court jury trial and sentenced to the penitentiary for a term of twenty years to life. On this writ of error he contends that certain rulings by the trial judge deprived him of a fair trial and resulted in a denial of due process. The specific errors charged relate to denial of a midtrial motion to poll the jury regarding a specific news story and admission in evidence of a revolver without proof that defendant had a gun during the robbery.

During the selection of the jury and after one panel of four had been accepted by both parties, the judge instructed both the accepted panel and all other prospective jurors not to read any newspaper articles concerning the trial and not to talk to anyone about the trial. All jurors were examined as to the effect that earlier newspaper articles concerning the case would have upon their determinations.

During the trial Ronald Slater, who at the time of the robbery in question was employed as a clerk at Russell's Pharmacy in Joliet, Illinois, testified that as he was counting change shortly before 10:00 P.M. on October 21, 1956, two men entered the store through the rear entrance. One of the men brandished a hand gun, slapped Slater, forced him to the rear of the store, and admonished him to keep quiet. Contemporaneously, Slater observed another man enter the pharmacy through the front entrance. This man, identified during the trial and during an earlier viewing at Lincoln, Illinois, as the defendant, forced Miss Jyme Fitzgerald, another employee of the pharmacy, to walk to the rear of the store where Slater and the other two men were. The men thereupon took approximately $400 from the cash register and fled. Slater immediately called the sheriff's police. Miss Fitzgerald could not identify defendant but gave essentially the same factual account of the robbery as Slater.

State Trooper Ralph Eaton testified that he arrested defendant in the late afternoon on October 22, 1956, near Lincoln, Illinois. At the time of the arrest, defendant possessed

a revolver described by the officer as a .38 special with a cut-down barrel. This was admitted as evidence at the trial over defendant's objection.

During the trial, after both the People and the defense had rested, the proceedings were suspended until the following morning, and the jurors were permitted to go to their homes. On that evening, March 26, 1957, there appeared in the Joliet Herald-News, the community's only daily newspaper, an article concerning defendant's trial. The article named each juror, stated that defendant was then serving a ten-to-fourteen-year sentence for felonious assault; that one of defendant's companions had been found guilty during the previous week of the offense charged against defendant; that another companion had pleaded guilty to the charge; and that an habitual criminal charge against defendant had been dismissed pursuant to the People's motion. When the proceedings resumed the following morning, the defense apprised the court of the news article and moved for a polling of the jury to determine whether any of the jurors had read such article. The motion was denied.

Defendant initially contends that the revolver should not have been admitted as evidence against him. Specifically, he argues that the failure of the State to connect this particular weapon with the crime charged against him precludes its use as evidence at his trial. As related earlier, witness Slater testified that a hand gun, "a pistol," was possessed and employed during the commission of the offense by one of the robbers other than defendant, and Miss Fitzgerald stated "a revolver" was so used. We have previously held that where there is evidence indicating that an accused possessed a weapon at the time of the offense, a similar weapon found in his possession at the time of his arrest may be admitted against him, even though not identified as the actual weapon used by the accused in committing the crime. (*People* v. *Gambino*, 12 Ill.2d 29; *People* v. *Lenhardt*, 340 Ill. 538.) And as we observed in *People* v. *Ashley*, 18

Ill.2d 272, 280, *cert.* denied 363 U.S. 815, 80 S. Ct. 1255, 4 L. Ed. 2d 1157, "* * * a weapon may be admitted in evidence where there is proof to connect it with the defendant and the crime. However, it is not necessary to establish that the particular weapon was the one which was actually used. Where the proper connection is established and it is shown that defendant possessed a weapon which could have been used in the commission of the crime, it may be admitted in evidence. (*People* v. *Mikka,* 7 Ill.2d 454; *People* v. *Dale,* 355 Ill. 330.) Likewise, where it appears that defendant participated in a crime in which the weapon was used, it may be admitted though he himself did not wield or possess it. *People* v. *Maciejewski,* 294 Ill. 390; *People* v. *Sobzcak,* 286 Ill. 157."

Here there was sufficient evidence to establish that a revolver was employed in the commission of the offense, there was testimony indicating that defendant participated in the crime, and the evidence clearly establishes that defendant possessed a revolver at the time of his arrest. Its admission into evidence was not error.

Nor do we agree that the trial court erred in refusing to poll the jury concerning possible prejudice arising from the newspaper article. *People* v. *Hryciuk,* 5 Ill.2d 176, is clearly distinguishable from the facts now before us. In that rape case two newspapers published stories during the trial. The headlines stated the State would "Ask the Chair for Young Slaying Suspect" and an article stated that the defendant there had confessed two murders and boasted of more than fifty rapes. The trial court there questioned the jurors and ascertained that some had read the articles but denied a mistrial. This court, with three members dissenting, held such denial error. In the case before us, however, counsel had questioned the jurors on *voir dire* examination regarding earlier articles similar to the one in question and accepted them. The judge had specifically instructed the jurors not to read or consider any newspaper articles or

radio broadcasts; that the case was to be decided on evidence properly admitted at the trial for the jury's consideration, and not from stories appearing in newspapers or elsewhere. The jurors were admonished not to discuss the case with anyone. In *People* v. *Murawski*, 394 Ill. 236, heavily relied upon by defendant, it is specifically pointed out (p. 239) that the jurors were not admonished by the court that they could not properly consider anything they might have read about the case. Furthermore, as we observed in *People* v. *Brinn*, 32 Ill.2d 232, *cert.* denied 382 U.S. 827, and *People* v. *Hagel*, 32 Ill.2d 413, possible conflicts that may arise in attempting to insure unbridled freedom of the press, while at the same time seeking to afford the defendant a fair trial by an impartial jury, may be largely avoided by requesting the complete seclusion of the jury throughout the course of the proceedings. No such request was made in this case, and under the totality of the circumstances appearing here, the trial court did not abuse its discretion in refusing to poll the jury concerning the article.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*